Thank you, Your Honor. Good morning, and may it please the court. I'm James P. Kemp. I represent Stephanie Hazelett in her case against Wal-Mart. I'd like to reserve two minutes for rebuttal. The main problem and issue in this case is that the district court did not follow the summary judgment standard. The district court did not view the evidence in the light most favorable to Stephanie Hazelett, did not draw inferences in her favor. In fact, drew inferences and viewed the evidence in Wal-Mart's favor. And these errors are reversible under the summary judgment standard because when you look at this evidence under the light most favorable to Ms. Hazelett and draw the inferences in her favor, this should definitely go the other way. For example, the district court, and this is an excerpt from record, page six, says that Stephanie failed to request leave to cover her whole absence for the time period that she couldn't drive a car. That's just absolutely untrue under the evidence in the Sedgwick call logs on April 17th of 2015. Stephanie called and asked to have her leave of absence expanded to cover at least six months. She was told that when the evidence of the doctor's note came in, that would be covered. It's right there in the log that she did request enough time. Also- Could I follow up on that before you, forgive me, counsel, could I follow up on that? Sure. I have this really extensive timeline here that my law clerk prepared for me, and I've tried to go back and check all of the ER. There's a lot of places in the deposition that are a little fuzzy, so I've been really trying to get my arms around this. I do see where she, on April 20th, that she received a letter from Sedgwick that's saying that she's FMLA eligible, but that she needed to provide a physician certificate. And at that point, I think she had made the longer request for FMLA, or for leave, but she only provided a certificate for February 28th through the period of March 10th. I'm not sure if that's what the court was referring to in the passage you just meant, but did she ever give a medical certificate for the longer period? So, that's part of the problem is that the medical certificate does cover the longer period. Excuse me. When you look at the FMLA medical certification, and it's the excerpts of records 68 through 72, or I'm sorry, 668 through 72, Dr. Roster, who filled this out and sent it over on April 29th, 2015, he indicated that she would be completely unable to work doing anything until the 10th of March, but that from the 11th of March until approximately the 17th of July, that she would have to do sit-down work only. Now, Ms. Hazlitt's job as an unloader was very physically demanding. It is not a job that you can do from a sit-down position only. So, while the doctor appears to have been looking at this from a worker's comp standpoint in that, okay, at some point she could be given a light duty job. In fact, she was not going to be able to do her full duty unloader job all the way until July 17th. But when Sedgwick got that, and we see throughout that Sedgwick has really acted in an incompetent manner, because when you look at that medical certification, it's clear that Ms. Hazlitt cannot do a regular job. Is not able to do a regular job. Right, but counsel, isn't the issue that Walmart repeatedly, I think three times I've got them offering her these alternative, temporary lighter duty jobs, and then she was accepting them and then not showing up for work. So, I- And the reason for that is that she had no way to get there. The workplace- Well, why is that their issue? Is it really your argument that that's reasonable accommodation they had to do? It's a 45 minute drive, right? It's a 45 minute drive each way, all right? She had no, and by the way, I had 3.15 in the morning because her start time was 4 a.m. She had no way to reasonably get there. And because of her inability to get there on a regular basis, she said, well, I'm gonna have to stay home. And so she was calling in sick every day. She's following these forms. Can you help me out on this part? That's why it seems mysterious to me. She was on workers' comp, and I think receiving workers' comp, and she was concerned about that. And that's how the record reads. So why did she keep accepting these temporary jobs? She didn't have to accept them, I don't think, right? Well, actually, because of the form itself. And one of them is at excerpts of record 666. This is the third one that they gave her. But the standard form, it talks about if you refuse to sign and accept for the temporary alternative duty job, it will be viewed as potentially job abandonment and termination of your employment could follow. So, and she testified this in her depositions, in her declaration, that she was afraid that she'd be fired if she didn't sign the thing. So what she would do is she would sign it, and then she would call in sick and say, you know, I can't make it. And they were fully aware of her transportation problems. She had spoken with them. She had asked them for information where she could try and do carpooling. At one point, they said they might help her with transportation. Then they gave them a hot face and said, no, we're not going to do that. They claimed to have asked around for her. They can't name a single person that they asked. They can't name a single person that they talked to. They refused to give her any contact information for other people on her shift, so that she could try and find somebody, say, hey, I'll chip in gas money if you give me a ride. Counsel, I'm looking at 666. I don't mean to keep interrupting you. There's a slight delay between the movement of your lips and the sound, and so I keep thinking that you've stopped. So I apologize that I'm interrupting you. I am looking, though, at 666 per your invitation, and it says, please be aware that failure to report to work at the date and time specified could result in suspension or termination of benefits. So if she didn't show, she was accepting, that's my problem. She was accepting these temporary positions, I think, that were lighter duty. I don't see in the record that she thought she couldn't do those jobs. And this is your reason, I think, for why she kept accepting them? Is that right, or am I missing another place? It's a little tight, but am I missing a different place on the form? Well, the place on the form is down where it says accept. Where it says you accept or you refuse. If she marked refuse, it says, I refuse the temporary alternative duty position being offered to me and acknowledge that my benefits could be suspended or denied due to noncompliance. And right below that, there's an asterisk that says, refusal may also be classified as job abandonment resulting in possible termination of employment. And that's the part that she testified to that concerned her. And so she felt like she had no choice but to sign this and accept it. And by the way, she wanted to do the job. She wanted to do the work. She wanted to accept the light duty job and go and do the work. She just couldn't get there. And until May 29th, when the doctor released her to drive, she wasn't going to be able to get there. And she told them that it was explained to them. And so that basically leads us to the conclusion that she needed a leave of absence as a reasonable accommodation under the Americans with Disabilities Act. By the way, that form, I contend, does not comply with the regulations for the FMLA. Because FMLA regulations say that an employee can refuse light duty job and continue to get their benefits under the FMLA, which is their leave of absence. That form should inform people that they do have that right under the Family and Medical Evac. And the failure to provide that and put that there is a violation of the regulation. And we do cite it to a number of places in the briefing that talks about light duty work, the sort of intersection between light duty work and workers' comp and the FMLA leave of absence requirement. So what we have is a need for an accommodation. Leave is a reasonable accommodation. They should have provided that. They interfered with her FMLA rights because they should have given her the leave of absence. And when the medical certification came back and it led them to only approve the leave until the 10th of March, there was ambiguity there. And what should have happened under the regulation 29 CFR section 825.305C is they should have given her seven days to correct that. They didn't do that. That's a violation of the FMLA. It's an interference with her rights under the FMLA to not give her an opportunity to go and correct that. And by the way, immediately on May 1st, when she was informed that the form only was making Sedgwick approve her to the 10th of March, she immediately got on the phone with Sedgwick. And again, that's in Sedgwick's log, where on May 1st, she got on there to request an extension of time to May 16th. That's at pages 656 through 657, item number 52, where she called and told them that. And they also acknowledged that she'd requested this on May 1st. It's at 662 through 664, item number 62. On May 5th, they acknowledged that she had done that. So when the employer calls her up and terminates her that very day, she says, hey, I have already seen that this is a problem. I have contacted Sedgwick. I have told them this. I've told them that I needed an extension to May 16th. And the employer fires her anyway. They said what she was told, and this is in her notes, and you can see her contemporaneous notes at ER 555 through 559, and particularly at 559, on May 1st at 5.07 p.m., the HR person called her and said, I don't care. We know that you're not going to get this approved. You're just fired, all right? That is an interference with the FMLA. It's a failure to accommodate under the Americans with Disabilities Act. So the district court's granting summary judgment for these circumstances is just incorrect. I mean, one of the things that the district court says is that she didn't provide them with notice. Oh, of course she did. She got hurt on the job at their place. They took her for medical care directly from Walmart. Walmart managers knew that this was going on. The Walmart manager did not go to her house to give her one of these TAD forms. They knew that she had a need for leave. They knew that she had a need for reasonable accommodation under the Americans with Disabilities Act. They didn't provide either of those. They violated the law, and the notice issue that the district court cites is just incorrect. They had notice. There was a time when she was confused because Sedgwick ran the workers' comp part and also ran the leave part, and they don't talk to each other very well, apparently. And so she kept getting told to call Sedgwick. So she would call Sedgwick workers' comp. It turns out she needed to be calling Sedgwick leave of absence department. That finally got resolved, and that confusion cleared up on April 16th. And from that point on, she was completely compliant. She was conversing with Sedgwick. She requested six months of leave. She requested to get the extension to clear up the issue with it only being approved through March 10th. All of that not taken care of. Council, did you want to save any time for rebuttal? I will. Thank you, Your Honor. Thank you. We'll hear from a post-dictate counsel. Go right ahead. Good morning, Your Honors. What we're not hearing today is how the district court judge fared in granting summary judgment. What we're hearing is that Ms. Hazlett disagrees that the district court judge drew the conclusion she did based on the undisputed facts. It's undisputed she was injured in the workplace. It's undisputed that she was provided three TADs. It's undisputed that they tried to work with her to help her get leave. And, Your Honor, to continue on some pointed questions that I believe are the crux of the problem of this argument, the district court judge fared in that he signed two of the three TADs. So, the first one was presented to her and signed on March 3rd. It was informed as of March 4th that she could not. March 7th, Ms. Buist, the HR representative, called her and said, hey, we were expecting you to show up today. What's going on? And approximately mid-March, Ms. Hazlett begins asking, hey, I can't get a ride. Can I get a ride? Walmart says, we don't have a legal obligation to do that, but we will ask around. And Ms. Hazlett has no evidence that they did not do what they testified under oath they did, which was ask at least five associates who all declined to go pick up Ms. Hazlett. Conversely, Ms. Hazlett- Counsel, counsel, the reason she couldn't get to work was because she was injured in a traffic accident or she was hurt at home or what was it again that she, how did she get hurt and she couldn't drive? She had a worker's compensation injury. She was working for you, right? Yes, your honor. Yes, your honor. All right, so that doesn't make any difference. Not with respect to accommodating her inability to get transportation to and from work. No. You could have put her back at her work someplace where she could have gotten transportation. We offered her a position that she said she wanted to do that was light duty, but she said she couldn't do it. She said she wanted to do it because if she didn't take it, you could fire her. The same documents say that if she accepts it and doesn't appear, we can fire her, but we didn't do either. We talked to her and tried to get rid of her. But opposing counsel just pointed out that it also says, and he was very patient with me walking through this form, that it says that if she refuses, she could be terminated. And so this one, is that right? She was surviving on workers' comp benefits and this says if she refuses a temporary duty assignment, she could be fired? Potentially, but it also says if she accepts it and doesn't show up, she could be fired. And neither happened. She received phone calls from Walmart saying, what can we do to get you back to work? She said, I can't, I can't drive. So we said, call and request leave. And her own notes and her deposition testimony indicate that drawing all inferences in her favor at the very latest, she was told on March 20th, unequivocally, you need to call Sedgwick. Here's the Sedgwick LOA, here's the phone number, call them, ask for leave. And on top of that, if you have any questions, Ms. Bobby Buist, who had that conversation, please call me. Let me know if you have any questions. Let me know if you have any problems getting this leave. Because I see you signed this TAD and you didn't show up. We've sent you another one that you haven't signed. We're not really sure what you'd like to do because it appears that you want or physically need to be home, which we're absolutely able to help you do. But you're also telling us that you can work, you just need to find a ride, which you are welcome to find a ride and come in and work this light duty position that we've created for you. We just need you to let us know what you're going to do. And the judge can make this credibility decision, not the jury, about whether this whole regime that you've put together of having Walmart, Sedgwick, and Sedgwick and her supervisors that she's all answering to, and she gets confused to judge her credibility, the judge can do that as a matter of law and the jury doesn't have to. No, your honor, I agree that the jury makes those decisions. However, I don't believe that the district court judge made a credibility determination. She looked at- The whole system that you put in place is reasonable. Yes, especially when she's receiving phone calls and receiving documents saying, you know, what's going on? You're accepting these tasks, you're way outside your period to request leave, but we understand that you're struggling. Please call us, please call Sedgwick. Her notes have the proper phone numbers. And I think some of the problems are, A, she testifies that she was concerned about the effect that leave would have on her workers' comp. And B, she testifies under questioning that it's a possibility that between March 20th and April 16th, that the reason she didn't call Walmart and the reason she didn't call Sedgwick to request a leave after having been unequivocally instructed by Ms. Buist, if you don't come in, you need to request a leave, here's the information, that she was waiting to hear back from her attorney, testifying that that's a possible reason why she didn't call during those periods. But those are not reasons to ignore Walmart's compliant policy requiring either request the leave as soon as it's reasonably foreseeable, which would have been March 4th  and didn't have transportation to get to the likely job offered to her, or at the latest, 30 days from now, Walmart could have fired her April 4th and it didn't. Instead, they called her and offered her tabs and tried to get her back to work. That's not her testimony though. Her testimony is she didn't understand everything that you said. Correct, I mean- Why doesn't a jury get to decide her credibility versus the manager's credibility and not as a matter of law by the district court judge? Because confusion is not a legal defense to Walmart complying with legal requirements of offering the leave. If you believe Walmart. Her testimony indicates that she agrees with the timeline that we've set forth. We haven't set forth a disputed timeline. But not specifically the instructions. She may disagree that she understood, but if we tell her, call this number, she has it in her notes to call this number and says, maybe she didn't call it because she was waiting to hear from her attorney. That sounds like she made a decision rather than call and maybe get it wrong. She made a decision to wait, an affirmative decision to wait. And that waiting is what cost her her job. Because- Counsel, under what circumstances- Because you didn't know she was injured. You didn't know she was injured. We knew she was injured, yes, your honor. All right. Under what circumstances would Walmart have been permitted to fire her for refusing the temporary placement? For refusing the temporary placement? Your honor, I don't know. In this case, they were confused why she accepted it and then didn't come in. So they did try to work with her. But I don't dispute and Walmart doesn't dispute that that's what it says on the form. It just simply hasn't come up because she wasn't terminated for refusing a temporary placement. And her argument in her appellate brief, her statement and her declaration all indicate that she wanted to work the light duty job that they created for her. So there's no dispute that she wanted that job. The question is, did Walmart, A, have to get her to and from work? Which the case law brief indicates, no, we don't have an obligation to remove a barrier that is outside the workplace. I think you have a really strong argument on reasonable accommodation. I think I have a very strong argument. What is troubling me, I'll give you just one more chance to respond to it, is I couldn't figure out really, well, that's a bit of an overstatement. I think you have a strong argument on accommodation. She's accepted these interim positions and then didn't show up for those either. I understand that. But I think she was surviving on workers' comp. And this form does say, and you haven't given an illegal justification for why it's permissible for Walmart to tell her that if she refuses the interim placement, she could be fired for that reason. So why, oops, I'm sure somebody's thundering. So doesn't that go to Judge Battalion's question about whether there really was confusion on her part about whether she was between a rock and a hard place? I think the law is that she didn't have a duty to take that temporary position and had she just said, no, thank you, she would have been able to have her workers' compensation under for whatever period she was otherwise entitled to it. And if I'm right about that, this seems to be a big problem. Understood, Your Honor. You are right that the law is, she doesn't have to take the light duty position if she doesn't want to. But if Walmart gives her the tag, she finds it, doesn't show up, so they call and act because they do want to talk about that. They don't just send her a notice of termination and you find you showed up, you're out. So while they do have an obligation to allow her to use the light duty job if she wants to, they don't have an obligation to reintroduce some other desire. But they did still pick up the phone and ask her about it. And she continued to insist, I want to work this job. I just can't drive there. I want to work this job. And in the record, it's absolutely indicative, even in the declaration prepared as part of the motion for summary judgment, and even in her deposition transcript, I wanted to and could work this light duty job they were offering me under the tag. So we didn't reach that argument about whether she was being forced to accept the job she didn't want because she did want it. And she testified under oath that she wanted it. Right, and I don't mean to belabor the point, but Judge Battalion's point is that, and you've been good about being very candid, Walmart knew she was heard, she was heard on the job. And at least two of these temporary duty offers were made to her at a time after Walmart knew very well, she told them she couldn't get to work, she couldn't drive 45 minutes, didn't have a way to get there at that hour of the, certainly not at that hour of the morning. Coupling that with the statement that you're not able to defend, which is the statement on the form that says, you could be fired if you refuse this job. And why isn't that creating an issue of fact for the jury about what her intent was? Whether they knew what her problem was very well. Because she was not fired for refusing the second tag, she was, the jury would see that she, whether or not that language is problematic, it was not fulfilled. That same language saying you will be fired if you accept this and don't show up, Walmart didn't do that. There's also language if you accept this, or if you don't do anything here, you may be fired. Walmart didn't do that either. Called her and asked her what it was that she needed. And also just to respond to the three different tags were generated, it wasn't to harass her or try to make anything difficult. Anytime that she had a follow-up appointment with her physician, a new tag was generated just in case those restrictions change. So each time that new tag was generated, it was sent to her and then they had a discussion about what she needed to do. Right, I appreciate that. But opposing counsel's argument, if I can paraphrase it loosely, is that they knew of all of those offers required her to, required the same transportation problem. And that they were making those offers and saying, by the way, if you don't take this, you're gonna be fired at a time when she was relying on her workers' compensation. Sure. So, right, so the question is whether a jury, I think, the question is whether a jury should be allowed to decide whether those were reasonable offers or whether Walmart really had any concern or confusion about what her genuine intent was. Right, and I think the confusion can be cleared up because Walmart offered her leave and that, if she was at all hesitant to take those jobs, they said, okay, we'll go ahead and ask for leave so we can sort this out. So, and it's undisputed that at least as early as March 20th and Ms. Hayes let herself admit to it, she was told, okay, well, if you're not gonna come in, even if you've signed the chat, if you're not gonna come in, you need to call and ask for leave so you can have this time as protected leave. Okay, so you've anticipated my question now. You've anticipated my question with this lengthy timeline. The first time Walmart says they told her you need to either take leave or come in is March 20th, is that right? Drawing all inferences in her favor, yes, because she testified that that conversation occurred. Thank you. So just to wrap up, as I say, I'm about out of time. I wanted to say that I think the district court judge got this right. This is not a bad guys, good guys. I understand that Ms. Hayes-Litt by her own words was confused about the process, but at the end of the day, the actions Walmart took were reasonable under the circumstances and legally supported. And Ms. Hayes-Litt's disagreement with how things shook out at the end is insufficient to create a dispute of fact in terms of whether or not Walmart was legally justified in terminating her for failure to provide medical certification that supported six months of leave, which it had a legal obligation and right to rely on that certification. And she absolutely was warned to be terminated when that was reported. Thank you, counsel. Counsel, you've saved about a minute and a half, I think. Thank you, your honor. So Walmart going back into March is a little bit misleading because what ends up happening is Ms. Hayes-Litt has sent a letter on April 15th from George Lopes, the human resources manager. And he basically, and this is at page 576 of the excerpt of the record. And he basically says, okay, you haven't done what we thought you ought to do. So contact us within three days and let us know what's going to happen. Ms. Hayes-Litt does that. And it's during the phone call that she has with Mr. Lopes on April 16th that she learns about the ambiguities and the problems with Sedgwick. And she immediately calls Sedgwick and asks for the leave of absence. So Walmart seems to be saying that, well, we fired her for what happened in March, but the April 15th letter is really a waiver. They really say, okay, we're not going to worry about what happened before. Fix it now, get it going going forward and everything's going to be okay. It's only now that they want to point to March and say, we're firing you for March instead. In April, she cleared everything up. She made all the requests that she needed to make. When there was a problem with the certifications and the medical doctor, the law under the FMLA is that they were to give her seven days to clear that up. We cite to the regulation that requires that. And they didn't do that. They violated the FMLA by not giving her the opportunity to fix the problem. And so there are questions of fact, there should be a trial to sort through these questions of fact. The judge credited Walmart and gave credibility to Walmart when the judge should have given the credibility to Ms. Hazlett and do the facts and evidence in the light most favorable to her. And so I would ask that you reverse and send this back for trial. Thank you, your honors. Thank you both for your arguments. I appreciate them very much. And we appreciate your patience with our technical difficulties today. We're going to take this case under advisement. And with that, we'll stand in recess for the day. Thank you, your honors.
judges: Tashima, Christen, Bataillon